UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
DARRELL GIST,
                      Plaintiff,

v.

WARDEN MONICA RECKTENWALD,
DR. DIANE SOMMER, HSA BRYAN WALLS,
PA JAYNE VANDER HEY-WRIGHT,
OPERATIONS LIEUTENANT CARL PEARSON,
CORRECTION OFFICER GEORGE
HUNTER, CORRECTION OFFICER
RICHARD McGRATH, CAPTAIN MATTHEW
WHINNERY, and THE ESTATE OF ROGER
O'MALLEY,
                      Defendants.
--------------------------------------------------------------x

**OPINION AND ORDER**

14 CV 6736 (VB)

Briccetti, J.:

      Plaintiff Darrell Gist, proceeding pro se and in forma pauperis, brings civil rights claims pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), against correction officers, medical staff, and the warden at Federal Correctional Institution Otisville ("FCI Otisville").

      Before the Court is plaintiff's motion for leave to file a Fourth Amended Complaint ("FAC"). (Docs. ##163, 164, 166).[1]

      For the reasons set forth below, plaintiff's motion is DENIED.

      The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331(a).

---

[1] The Court construes these multiple submissions as a motion for leave to file a single FAC. (Doc. #181). However, the proposed FAC plaintiff filed with the Court is missing page 14. (Doc. #166-1). Page 14 was subsequently submitted by defense counsel, without objection from plaintiff. (Doc. #170-1).

1

## BACKGROUND

I.  Factual Background

In deciding the pending motion, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in plaintiff's favor. Construed liberally, the proposed FAC alleges the following.

While incarcerated at FCI Otisville on April 23, 2012, plaintiff had x-rays taken of his neck. Sometime after these x-rays were taken, defendant Sommer, the clinical director and institutional physician at FCI Otisville, and defendant Vander Hey-Wright, a physician's assistant employed by the United States Public Health Service Commissioned Corps ("PHS"), allegedly misread these x-rays. Their error caused Sommer and Vander Hey-Wright to misdiagnose plaintiff with polymyositis instead of realizing plaintiff was developing degenerative disc disease and cervical myelopathy.

At about 2:30 a.m. on April 11, 2014, plaintiff fell and hit his head and neck, which caused him to lose feeling in his left arm and rendered him paralyzed from the waist down. As plaintiff was lying on the floor, he called out for assistance. Defendant Hunter, a correction officer, was the first to respond. Plaintiff told Hunter, "I fell and hit my head against the locker[.] I can't feel my legs[.] . . . I think I'm [p]aralyzed." (Doc. #166-1 at 3 (omission in original)). Hunter called defendant Pearson, an operations lieutenant, but neither called for emergency medical care. Defendant O'Malley, a correction officer, asked plaintiff if he was feeling any pain, and plaintiff responded, "No, I can['t] feel anything below my waist." (Doc. #166-1 at 4). Plaintiff told O'Malley he was injured and needed to go to the hospital. Plaintiff instructed O'Malley not to touch plaintiff. Defendants Pearson, Hunter, O'Malley, and defendant McGrath, a correction officer, refused plaintiff's request to go to the hospital for

medical treatment. Instead, over plaintiff's objections, O'Malley, McGrath, and Hunter lifted plaintiff and carried him to his bed, further injuring plaintiff. O'Malley, McGrath, and Hunter informed plaintiff they would have medical staff address his concerns when staff arrived later that morning.

At around 6:00 a.m., a non-defendant correction officer arrived and, along with an inmate, moved plaintiff to a wheelchair to transport him to the medical department. However, when the officer left shortly thereafter, plaintiff fell out of the wheelchair, hit his head, and was rendered unconscious. While plaintiff regained consciousness, the non-defendant officer called the medical department. About forty-five minutes later, defendant Walls, the health service administrator at FCI Otisville, arrived to bring plaintiff to the medical department on a stretcher.

While in the medical department, plaintiff underwent a CT scan. Plaintiff repeatedly requested to go to the hospital, but defendants Sommer and Walls denied the request. Instead, plaintiff was left unattended for three hours in the medical department before Walls moved him to the suicide watch room.

In the suicide watch room, defendants Walls and Vander Hey-Wright transferred plaintiff from the stretcher to a mattress, dropping plaintiff onto the floor. Vander Hey-Wright did not provide plaintiff with medication or other treatment at this time.

Sometime thereafter, Sommer reviewed plaintiff's CT scan and, after not seeing any acute fractures, decided not to provide further treatment, examine plaintiff, or have plaintiff transferred to the hospital.

Later, plaintiff telephoned his sister to complain about the prison staff's deficient medical care. Plaintiff's sister filed a complaint against Sommer and Vander Hey-Wright. Sommer told

plaintiff that if he continued to complain, Sommer "would have [plaintiff] shipped far away from home." (Doc. #166-1 at 8).

At about 2:00 p.m., Vander Hey-Wright received the results from plaintiff's CT scan, which confirmed that plaintiff suffered from a "severe disc [i]mpediment" causing severe spinal cord compression that required immediate spinal cord decompression. (Doc. #166-1 at 8).

Sommer, Vander Hey-Wright, Walls, and defendant Recktenwald, the warden at FCI Otisville, reviewed plaintiff's medical files, alerting them to plaintiff's serious medical issues. Despite this knowledge, they had plaintiff transferred to the Special Housing Unit ("SHU") instead of to the hospital. Walls and a non-party officer dragged plaintiff into a hallway where they lifted him onto a wheelchair and transported him to the SHU. Walls and defendant Whinnery, the captain of security at FCI Otisville, ordered all medical staff working in the SHU not to enter plaintiff's cell. Various non-defendant nurses denied plaintiff pain medication from April 12 through April 14, 2014, because he was unable to retrieve the medication for himself.

On April 16, 2014, plaintiff requested an examination from Sommer, who initially refused. Instead, Sommer allowed plaintiff to remain in the SHU despite his extreme pain and severe neck and spinal cord injuries. On April 21, Sommer responded to plaintiff's request and explained to plaintiff the CT scan showed plaintiff suffered from bulging disc arthritis, which caused plaintiff's pain. "Sommer flat out lied to [plaintiff] in her reply, she knew that a herniated disc was causing sever[e] cord imping[e]ment and compression." (Doc. #166-1 at 11).

On April 30, 2014, plaintiff asked Walls why he was being denied treatment. Walls responded that plaintiff's requested treatment was too expensive and would affect FCI Otisville's insurance. Throughout the complaint, plaintiff alleges various defendants and other prison personnel indicated they believed plaintiff was exaggerating the extent of his medical issues.

4

On May 7, 2014, plaintiff was transferred from FCI Otisville to Federal Medical Center Butner. There, plaintiff was examined by various medical personnel and underwent extensive testing. On June 6, plaintiff was diagnosed with cervical myelopathy and impaired functions, and an MRI was ordered. On June 9, the results of plaintiff's MRI showed he suffered from severe spinal cord compression in his cervical spine. Plaintiff underwent spinal cord surgery on June 26, 2014.

Plaintiff claims his severe spinal cord impingement caused irreversible spinal cord damage. He is now classified as a paraplegic with severe spasticity.

II. Procedural Background

The procedural background of this case is recited only to the extent necessary for deciding plaintiff's motion.

Plaintiff filed the original complaint on August 18, 2014, naming as defendants Sommers, Walls, and "a variety of unknown medical staff members." (Doc. #1). On September 25, the Court issued an order directing service on the named defendants and informing plaintiff the allegations in his complaint were insufficient to assist the Court in identifying the unidentified defendants. (Doc. #6). On December 29, plaintiff filed a letter with the Court providing further information about the unidentified defendants. (Doc. #9). On January 7, 2015, the Court issued an order directing the United States Attorney to ascertain the identities of unidentified defendants pursuant to Valentin v. Dinkins, 121 F.3d 72, 76 (2d Cir. 1997), and directed plaintiff to file an amended complaint naming the defendants once identified. (Doc. #10). The Court informed plaintiff "[t]he amended complaint will replace, not supplement, the original complaint." (Doc. #10 at 2).

On December 12, 2015, Walls and Sommers, the only then-identified defendants, answered the complaint. (Docs. ##47-48). On December 14, after receiving several extensions, the United States Attorney provided the identities of the unidentified defendants. On January 11, 2016, plaintiff filed the First Amended Complaint, alleging substantially the same events alleged in the proposed FAC and naming the newly-identified defendants Whinnery, Vander Hey-Wright, Hunter, McGrath, O'Malley, and Pearson, along with already-identified defendants Walls and Sommers. (Doc. #52). On January 15, plaintiff moved to correct the amended complaint to add further allegations. (Doc. #53). The Court granted the motion, making the "Corrected Amended Complaint" the operative complaint. (Doc. #55). Walls, Sommers, Hunter, McGrath, Pearson, Whinnery, and O'Malley's Estate answered the Corrected Amended Complaint. (Docs. ##58–59, 76–79, 86). Vander Hey-Wright moved to dismiss the Corrected Amended Complaint. (Doc. #73). By Memorandum Opinion and Order dated August 1, 2016, the Court granted Vander Hey-Wright's motion to dismiss based on her immunity under the Public Health Service Act ("PHSA"), 42 U.S.C. § 233(a). (Doc. #105 at 4-6). Plaintiff objected to Vander Hey-Wright's dismissal (Doc. #116) and moved "for leave of Court to exhaust administrative FTCA remedy." (Doc. #117). The Court denied both motions. (Doc. #119).

On July 19, 2016, plaintiff moved for leave to file a Third Amended Complaint ("TAC") to add more detailed allegations regarding the same events described in the prior pleadings, add Warden Recktenwald as a defendant, and add claims. (Doc. #103). The Court granted plaintiff's motion (Doc. #107), making the TAC the operative complaint. (Doc. #108). After the Court ruled on plaintiff's motion, defendants opposed the motion by filing a memorandum of law in opposition (Doc. #106) and seeking reconsideration. (Doc. #109). The Court denied reconsideration. (Doc. #112).

On July 25, 2016, plaintiff received discovery material regarding his alleged misdiagnosis that occurred in 2012.

On August 4, 2016, plaintiff filed a "Claim for Damage, Injury or Death" with the United States Department of Justice, Federal Bureau of Prisons. (Doc. #163 at 13-23). The allegations and information in the claim relate solely to the events at FCI Otisville on April 11, 2014, and shortly thereafter, and essentially complain of the allegedly inadequate medical care plaintiff received after his April 11 fall.

On September 16, 2016, defendants Hunter, McGrath, O'Malley's Estate, Pearson, Sommers, Walls, and Whinnery answered the TAC. (Docs. #121-127). On October 17, Recktenwald moved to dismiss the TAC. (Doc. #129).

On March 13, 2017, the Court held an on-the-record conference during which it denied Recktenwald's motion to dismiss[2] without prejudice to raising the same arguments in a motion for summary judgment (Doc. #162), and informed plaintiff that, if he wished to file a motion for leave to file a FAC, he must file a single proposed FAC rather than documents to supplement a previous complaint.

On March 15, 2017, plaintiff moved for leave to file a supplemental complaint (Doc. #163), a motion to add parties (Doc. #164), and a motion for leave to supplement the TAC. (Doc. #165). On March 24, plaintiff moved for leave to file a FAC, in which he acknowledged the Court's instruction to file a proposed FAC as one complete document. (Doc. #166). On April 18, plaintiff moved for leave to file an amendment to the caption of the proposed FAC. (Doc. #171). On May 22 and 23, plaintiff filed four more documents to further supplement and amend the proposed FAC. (Docs. ##176-179).

---

[2]  Recktenwald has not filed an answer to the TAC. Her answer is due June 29, 2017.

By Order dated May 25, 2017, the Court stated it would construe plaintiff's March 15 through April 18 submissions (Docs. ##163-166, 171) as a motion for leave to file a single FAC. The Court also denied plaintiff's later attempts to amend and supplement his FAC (Docs. ##176-179) and extended the deadline to complete discovery to June 30, 2017. (Doc. #181).

## DISCUSSION

I. <u>Legal Standard</u>

Rule 15(a)(2) instructs that courts "should freely give leave" to amend a complaint "when justice so requires." See also Foman v. Davis, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."). A district court may deny leave for "good reason" such as futility, bad faith, undue delay, or undue prejudice to the opposing party, but "outright refusal to grant the leave without any justifying reason for the denial is an abuse of discretion." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200–01 (2d Cir. 2007). Amendment is futile when the proposed amended complaint could not withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6). See Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001); see also Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)) (establishing plausibility framework for evaluating a motion to dismiss).

II. <u>Amendments</u>

As compared to the TAC, the proposed FAC is different in that it (i) asserts a new medical malpractice claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-80; (ii) adds two new defendants, the United States and Vander Hey-Wright; (iii) contains

further allegations and supporting exhibits; and (iv) seeks a new form of relief, namely a reduction in his term of imprisonment.

The Court addresses each aspect of plaintiff's proposed amendments in turn.

A.  New FTCA Claim

The proposed FAC asserts a new tort claim under the FTCA.

Defendants argue that leave to amend should be denied as futile because the FTCA claim is barred by the statute of limitations.

The Court agrees.

The FTCA includes the following statute of limitations:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. §2401(b).

Plaintiff's administrative claim is dated August 4, 2016. Therefore, plaintiff's proposed FTCA claim is time barred if it accrued before August 2014.[3]

"Typically, FTCA medical malpractice claims accrue 'at the time of injury.'" A.Q.C. ex rel. Castillo v. United States, 656 F.3d 135, 139 (2d Cir. 2011) (quoting Kronisch v. United States, 150 F.3d 112, 121 (2d Cir. 1998)).

Plaintiff argues he should benefit from the diligence-discovery rule, and therefore the time of injury was not April 11, 2014, the date he fell, but was July 27, 2016, when he allegedly learned "Vander Hey-Wright['s] diagnosis of [polymyositis] was wrong, and she misread the x-

---

[3]  There is some uncertainty in this Circuit as to whether the date the claim was "presented" is August 4, 2016, which is when the claim is dated and presumably was mailed, or August 11, 2016, when the agency received the claim. Because the outcome here does not depend on which of these dates is operative, the Court need not resolve that issue.

rays taken on 04/23/2012 which stated that [p]laintiff had [d]egenerative disc disease." (Doc. #176 at 15-17).

"[I]n cases . . . where plaintiff would reasonably have had difficulty discerning the fact or cause of injury at the time it was inflicted, the so-called 'diligence-discovery rule of accrual' applies." Kronisch v. United States, 150 F.3d at 121. "The diligence-discovery rule sets the accrual date at the time when, 'with reasonable diligence,' the plaintiff 'has or should have discovered the critical facts of both his injury and its cause.'" A.Q.C. ex rel. Castillo v. United States, 656 F.3d at 140 (quoting Barrett v. United States, 689 F.2d 324, 327 (2d Cir. 1982)) (alterations omitted). The diligence-discovery rule provides:

> A claim will accrue when the plaintiff knows, or should know, enough "to protect himself by seeking legal advice." The diligent-discovery rule protects plaintiffs who are either experiencing the latent effects of a previously unknown injury or struggling to uncover the underlying cause of their injuries from having their claims time-barred before they could reasonably be expected to bring suit; at the same time, the rule avoids unduly extending the limitations period for those who could have timely presented their claim . . . had they acted diligently in protecting their interests.

A.Q.C. ex rel. Castillo v. United States, 656 F.3d at 140 (quoting Kronisch v. United States, 150 F.3d at 121).

Plaintiff's FTCA claim, both here and before the Bureau of Prisons, is that defendants failed to provide him adequate medical care at FCI Otisville after his April 11, 2014, fall. The proposed FAC, like plaintiff's previous pleadings, is replete with allegations indicating plaintiff was aware he suffered a serious neck injury requiring medical care and that plaintiff repeatedly requested medical treatment. Indeed, plaintiff alleges his condition was so serious and so obvious during his confinement in April and May 2014 that defendants' failure to treat him amounted to a constitutional violation because of their deliberate indifference to his medical needs. Simply put, plaintiff's complained-of injuries were not caused by the latent effects of a

10

previously unknown injury or because plaintiff struggled to uncover the cause of his injuries. Plaintiff's allegations from the outset of this case are that on April 11, 2014, he knew he suffered a serious injury, and that defendants' failure to provide adequate medical care exacerbated this known injury.

Because the diligence-discovery rule does not toll the accrual of plaintiff's FTCA claim and his claim accrued more than two years before he presented the claim to the federal agency in August 2016, plaintiff's FTCA claim is time-barred. Therefore, granting leave to amend to allow plaintiff to assert a claim under the FTCA would be futile. See, e.g., Williams v. Lanese, 2016 WL 829858, at *2 (D. Conn. Mar. 1, 2016) ("A proposed amendment is futile when it makes a claim that is barred by the statute of limitations.").[4]

B. New Defendants

Plaintiff seeks to add the United States and Vander Hey-Wright as defendants. The Court addresses the futility of adding each potential defendant in turn.

1. United States

"The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." Liranzo v. United States, 690 F.3d 78, 84 (2d Cir. 2012) (quoting United States v. Mitchell, 445 U.S. 535, 538 (1980) (alterations omitted)).

The FTCA is the only basis upon which plaintiff asserts the United States has consented to be sued. Moreover, the Court is unaware of any other basis by which the United States consented to be sued, as relevant to this case.

---

[4] Plaintiff will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

11

Because, as explained above, plaintiff cannot assert a valid FTCA claim against the United States, it would be futile to allow plaintiff to add the United States as a defendant.

2. Vander Hey-Wright

The Court previously dismissed defendant Vander Hey-Wright because she is a PHS employee and is therefore immune from suit. (Doc. #105 at 4–6).

The PHSA provides that a claim against the United States under the FTCA is the exclusive remedy for claims caused by the acts or omissions of PHS employees acting within the scope of their employment. 42 U.S.C. § 233(a); Hui v. Castaneda, 559 U.S. 799 (2010) (holding the PHSA precludes Bivens actions against PHS employees for claims arising out of the performance of their medical functions related to their employment).

Plaintiff fails to provide any argument that Vander Hey-Wright is not immune from suit under the PSHA, as the Court previously held, and the Court finds no reason to depart from its prior ruling.

Because Vander Hey-Wright is immune from suit, it would be futile to allow plaintiff to add her as a defendant.

C. Further Supporting Allegations and Exhibits

The proposed FAC contains new factual allegations and supporting exhibits.

Plaintiff argues he should be granted leave to amend because this information is newly discovered.

Defendants argue leave to amend should not be granted because, among other reasons, even if this information were newly discovered, its inclusion in the pleadings does not materially advance the litigation and imposes an undue burden on defendants.

The Court agrees with defendants.

If plaintiff were granted leave to file his proposed FAC with additional allegations and exhibits, he would be in no better position, defendants would need to file new answers, and the ultimate resolution of this almost three-year-old case would be further delayed. The interests of justice do not require that result. Indeed, the interests of justice require the opposite.

The information plaintiff now seeks to include in his pleadings is immaterial, in part, because defendants answered[5] the TAC and have not moved to dismiss. Therefore, there is no need for plaintiff to further support his claims with additional allegations or other support. Holmes v. City of New York, 2016 WL 915332, at *7 (S.D.N.Y. Mar. 4, 2016), reconsideration denied, 2017 WL 519250 (S.D.N.Y. Feb. 8, 2017).

Relatedly, the fact that defendants have already answered plaintiff's TAC provides further justification to deny plaintiff's requested relief. If plaintiff were granted leave to file the proposed FAC, defendants would then have to file yet another answer. There is no legitimate reason to impose this additional burden on defendants, given that there is no corresponding benefit to plaintiff, the Court, or any other entity.

Although plaintiff's repeated requests to file amended pleadings to add new allegations as he becomes aware of relevant information through discovery is misguided, it is also understandable in light of plaintiff's pro se status. Plaintiff appears to be trying to prove his claims based on his pleadings. But that is neither necessary nor possible. That is, plaintiff need not and cannot prove his claims via his pleadings. Plaintiff will be given that opportunity as his case progresses through the stages of litigation. Denying plaintiff leave to include the proposed information in his pleadings does not have any negative impact on plaintiff in this case.

---

[5] Again, the Court notes one exception—Recktenwald has not yet answered.

In light of the reality that granting leave to amend to include additional allegations and exhibits will cause a material burden without any corresponding benefit, it would be contrary to the interests of justice to grant plaintiff leave to amend his complaint.

D.  New Relief

Plaintiff's proposed FAC seeks a new form of relief; specifically, "a [r]eduction of [t]erm [o]f [i]mprisonment as a result of a [m]otion by the [d]irector of the Bureau of Prison[s]" (Doc. #166-1 at 16) under Section 1B1.13 of the United States Sentencing Guidelines.

Defendants argue the Court should deny plaintiff leave to seek this new relief because it would be futile, as the Court is without authority to grant such relief absent the Director of the Bureau of Prisons filing a motion under 18 U.S.C. § 3582(c).

Plaintiff does not contend otherwise, and he does not allege the Bureau of Prisons has made any such motion. Nor is the Court aware of any such motion. Moreover, the Court does not have the authority to compel the Bureau of Prisons to make such a motion, United States v. Goldberg, 2016 WL 6820728, at *2 (S.D.N.Y. Oct. 4, 2016), even if this were the proper court to entertain such a motion.

Granting plaintiff leave to include this new form of relief would therefore be futile.

## CONCLUSION

Plaintiff's motion for leave to file a Fourth Amended Complaint is DENIED. The Third Amended Complaint (Doc. #108) remains the operative complaint.

By June 29, 2017, defendant Recktenwald shall file an answer to the Third Amended Complaint.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purposes of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

The Clerk is directed to terminate the motions. (Docs. ##163, 164, 166).

Dated: June 15, 2017
      White Plains, NY

SO ORDERED:

*[signature]*

Vincent L. Briccetti
United States District Judge