UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DARRELL GIST,<br><br>    Plaintiff,<br><br>  v.<br><br>DR. DIANE SOMMER, OFFICER GEORGE HUNTER, OFFICER RICHARD MCGRATH, THE ESTATE OF OFFICER ROGER O'MALLEY, LIEUTENANT CARL PEARSON, CAPTAIN MATTHEW WHINNERY, HEALTH SERVICES ADMINISTRATOR BRYAN WALLS, and WARDEN MONICA RECKTENWALD,<br><br>    Defendants. | ECF CASE<br><br>No. 14 Civ. 6736 (VB) |

**MEMORANDUM OF LAW IN SUPPORT OF CAPTAIN WHINNERY, AHSA WALLS, AND WARDEN RECKTENWALD'S MOTION FOR RECONSIDERATION**

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
Counsel for Defendants
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2697/2678

Of Counsel:

PETER ARONOFF
JEANNETTE A. VARGAS
Assistant United States Attorne

**TABLE OF CONTENTS**

ARGUMENT ............................................................................................................................. 1

    I.       Standard of Review ................................................................................................. 1

    II.      The Court Overlooked Controlling Second Circuit Caselaw Regarding
            Reliance on the Medical Judgment of Medical Staff ................................................... 2

    III.     The Court Overlooked Controlling Caselaw, and Committed Clear Legal Error,
            in Holding that Subjective Motivation Was Relevant in Assessing Qualified
            Immunity for a Deliberate Indifference Claim ............................................................ 7

    IV.     The Opinion Overlooks that the Evidence of AHSA Walls and Captain
            Whinnery's Involvement in any Denial of Medical Treatment Constitutes
            Inadmissible Hearsay ................................................................................................. 9

    V.       The Opinion Erroneously Finds That There Is Evidence that AHSA Walls
            Denied Plaintiff Medical Treatment in His Role on the Utilization Review
            Committee ................................................................................................................. 11

CONCLUSION ...................................................................................................................... 15

# TABLE OF AUTHORITIES

*Cases*                                                                                                    *Page(s)*

*Brock v. Wright*,
    315 F.3d 158 (2d Cir. 2003) ............................................................................. 2, 5, 6

*Crawford-El v. Britton*,
    523 U.S. 574 (1998) ............................................................................................. 7

*Cuoco v. Moritsugu*,
    222 F.3d 99 (2d Cir. 2000) ........................................................................... passim

*Davidson v. Griefinger*,
    164 F.3d 617 (2d Cir. 1998) ............................................................................... 9

*Farmer v. Brennan*,
    511 U.S. 825 (1994) ........................................................................................... 13

*Friedman v. Swiss Re Am. Holding Corp.*,
    No. 11 CV 1792 (VB), 2015 WL 2330149 (S.D.N.Y. Mar. 9, 2015) ................... 10

*Garcia v. Does*,
    779 F.3d 84 (2d Cir. 2015) ................................................................................. 7

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
    43 F. Supp. 3d 369 (S.D.N.Y. 2014) .................................................................. 2

*Johnson v. Ganim*,
    342 F.3d 105 (2d Cir. 2003) ............................................................................... 8

*Kaminsky v. Rosenblum*,
    929 F.2d 922 (2d Cir. 1991) ............................................................................... 9

*Lewal v. Tippy*,
    133 F.3d 907 (2d Cir. 1998) ............................................................................... 9

*Malley v. Briggs*,
    475 U.S. 335 (1986) ............................................................................................. 7

*Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*,
    164 F.3d 736 (2d Cir. 1998) ............................................................................. 10

*Rodriguez v. Manenti*,
    606 Fed. Appx. 25 (2d Cir. 2015) ...................................................................... 9

*Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*,
    183 F.3d 155 (2d Cir. 1999) ............................................................................. 11

*Smith v. Carpenter*,
　316 F.3d 178 (2d Cir. 2003) ................................................................................................ 13

*Twine v. Powers*,
　No. 09 CIv. 7631 (RWS), 2012 WL 3834082 (S.D.N.Y. Aug. 27, 2012) ................................. 7

### *Rules*

Federal Rule of Civil Procedure 56(c)(2) .................................................................................. 10

Federal Rule of Civil Procedure 60(b) ....................................................................................... 1

Defendants Captain Matthew Whinnery, Assistant Health Services Administrator ("AHSA") Bryan Walls, and former FCI Otisville Warden Monica Recktenwald (the "movants"), respectfully submit this memorandum of law in support of their motion for partial reconsideration of the Court's February 24, 2020 opinion and order ("Opinion") on their motion for summary judgment, ECF No. 269.

In rendering its decision, the Court overlooked controlling precedent and material facts that require judgment be granted to the movants. The Court failed to address governing Second Circuit precedent cited in the movants' papers establishing that nonmedical prison officials cannot be held liable under *Bivens* for a failure to intervene in the care being provided by medical staff. The Court also erroneously held, in contravention of Supreme Court and Second Circuit caselaw cited in the movants' briefs, that qualified immunity could be denied if there was a genuine issue of material fact as to subjective intent, when the requisite legal standard is objective reasonableness. Further, the Court relied on inadmissible hearsay in holding that there was evidence that Captain Whinnery and AHSA Walls had issued an order that plaintiff be denied medical treatment. And the Opinion erroneously held that there was evidence that AHSA Walls had participated in a decision to deny plaintiff access to medical care in his role on the Utilization Review Committee ("URC"), when the undisputed evidence establishes that the URC never rendered such a decision. For all these reasons, the Court should reconsider its Opinion and grant summary judgment to the movants.

## ARGUMENT

### I. Standard of Review

The movants seek reconsideration of the Court's Opinion pursuant to Local Civil Rule 6.3 and Federal Rule of Civil Procedure 60(b). The standard under both rules is the same: the moving party must show an "intervening change in controlling law, the availability of new

evidence, or the need to correct a clear error or prevent manifest injustice." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 43 F. Supp. 3d 369, 373 (S.D.N.Y. 2014). The movant must demonstrate that the Court "overlooked controlling decisions or material facts that were before it on the original motion" that "might materially have influenced its earlier decision." *Id*. (internal quotation marks omitted).

## II. The Court Overlooked Controlling Second Circuit Caselaw Regarding Reliance on the Medical Judgment of Medical Staff

The movants seek reconsideration first because the Opinion overlooked controlling Second Circuit authority holding that nonmedical staff who rely on the judgment of clinical staff cannot be held personally liable for deliberate indifference to medical needs, and further are qualifiedly immune from suit.

The movants' briefs argued that Warden Recktenwald, Captain Whinnery, and AHSA Walls relied on the medical decisionmaking of FCI Otisville's clinical staff, and for that reason they were both not liable for deliberate indifference, and were qualifiedly immune from suit. *See* Defendants' Opening Brief ("Def. Op. Br.") 18-19; Defendants' Reply Brief ("Def. Rep. Br.") 1-6. As the defendants noted, the Second Circuit has held, for example, that a prison's warden and health services administrator were qualifiedly immune in an Eighth Amendment deliberate indifference case because they were entitled to rely on the prison physicians' diagnosis. Def. Op. Br. 18 (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 111 (2d Cir. 2000)). Likewise, in *Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003), the Second Circuit affirmed a grant of summary judgment to a facility superintendent who had no medical training where no evidence showed he would have understood an outside medical consultation was necessary.

*Cuoco* and *Brock* are precisely on point, and present facts that are materially indistinguishable from those presented in the summary judgment motion. In denying the

2

nonmedical staff movants' motion for summary judgment, the Court nonetheless failed to address either case. Because these are controlling precedent on the issue of whether and to what extent nonmedical prison staff can be held personally liable under *Bivens* for relying on the judgment of medical staff, the Court's failure to apply the principles set forth in those cases merits reconsideration.

In *Cuoco*, the Second Circuit considered claims of deliberate indifference brought by a pre-trial transsexual detainee who was receiving estrogen treatment prior to her incarceration. She alleged that the Bureau of Prisons medical doctor refused to prescribe her estrogen after she arrived at the facility because she was not a "true or genuine transsexual." 222 F.3d at 104. After plaintiff threatened suicide, she spoke to the prison psychologist and psychiatrist. *Id.* The psychologist informed her that he was not a medical doctor and could do nothing about her medication, and warned plaintiff not to "manipulate the system." *Id.* at 104, 111. The psychiatrist witnessed her withdrawal symptoms from the lack of estrogen, but refused to discuss her medical problems with her, stated he could do nothing about the estrogen prescription, and eventually had her restrained after she started "being disruptive." *Id.* at 111. Plaintiff complained to the Health Service Administrator ("HAS") and the Warden about the denial of estrogen. *Id.* at 104. The HSA did not respond, and the Warden told Plaintiff that she "should act like a man the way God intended." *Id.*

Plaintiff brought suit, which was construed as a *Bivens* action for deliberate indifference to medical needs. *Id.* at 105. The district court granted summary judgment as to the Warden, the HSA, the psychologist, and the psychiatrist on qualified immunity grounds, and plaintiff appealed. *Id.* at 110.

3

On appeal, plaintiff argued that the Warden and the HSA were liable under *Bivens* because they were "in a position to intervene" with respect to the denial of estrogen treatment and failed to take action. *Id.* at 111. The Second Circuit concluded that both the Warden and the HSA were entitled to qualified immunity because there "is no evidence that [the Warden or the HSA], neither one a medical doctor, had the authority to intervene in an admittedly medical decision made by" the medical staff. *Id.* "Nor on the undisputed facts could either have prescribed estrogen treatments for [plaintiff], no matter how attentive to her problems or symptoms they were." *Id.* The Second Circuit rejected the argument that either the Warden or the HSA had a legal duty to intervene in the care provided by the medical staff: "One can imagine the repercussions if non-medical prison officials were to attempt to dictate the specific medical treatment to be given to particular prisoners—for whatever reason. It was, as a matter of law, objectively reasonable for the [Warden and HSA] not to have done so with respect to [plaintiff]." *Id.* The Second Circuit concluded that both the Warden and the HSA were "therefore entitled to summary judgment on qualified immunity grounds both because (a) the conduct attributed to them is not prohibited by federal law, . . . and (b) these defendants were non-doctors whose failure to intercede in the medical treatment of an inmate was, if wrongful, not objectively unreasonable." *Id.*

With respect to the psychologist, the Second Circuit concluded that he did not act in a deliberately indifferent manner by denying plaintiff estrogen or failing to intervene with her doctors and recommend they give her estrogen because, "having no medical degree, [he] had not authority to decide what medical treatment was appropriate." *Id.* at 111. The Second Circuit further held that deferring to her doctor's medical judgment that plaintiff did not need estrogen treatment was "not objectively unreasonable." *Id.* at 112 ("Disregarding Cuoco's request for

4

estrogen, placing her on suicide watch, and telling her there was nothing he could do about her medication were, as a matter of law, not objectively unreasonable."). And the Second Circuit similarly found that plaintiff's psychiatrist enjoyed qualified immunity, even though he did have a medical degree and could prescribe medication, because he was not the doctor who had responsibility for plaintiff's medical treatment, and his "refusal to intervene in the medical treatment of another doctor's patient simply because the patient demanded it was objectively reasonable as a matter of law." *Id.* at 111.

Whereas in *Cuoco* the plaintiff's claims were based on the Warden's failure to intervene, in *Brock*, the prison superintendent was the decisionmaker who ultimately decided not to permit an outside consultation. The Second Circuit nonetheless held that the superintendent was entitled to defer to the judgment of medical professionals. Specifically, in *Brock*, after an inmate's treating physician had determined that plaintiff should receive an outside medical consultation, this decision was overturned by the regional medical director. 315 F.3d at 161. The plaintiff then grieved this decision. 315 F.3d at 162. The grievance committee authorized him to see the outside consultant. *Id.* at 162. The superintendent overturned the decision of the committee, in reliance upon the regional medical director's opinion. *Id.* The Central Office Review Committee ("CORC") then affirmed the superintendent's decision. *Id.*

The plaintiff sued, *inter alia*, the superintendent and the director of the inmate grievance program who signed the CORC affirmance under *Bivens*, asserting that the defendants' refusal to respond adequately to his medical condition constituted cruel and unusual punishment in violation of the Eighth Amendment. The district court granted summary judgment to defendants and plaintiff appealed. The Second Circuit held that, even assuming the superintendent "was aware of the full extent of [the plaintiff's] condition," the superintendent's deference to the

5

medical opinion of doctors regarding the best course of treatment would not establish deliberate indifference where there was no evidence that the superintendent was otherwise aware that this medical decision was not responsive to the plaintiff's serious medical needs. 315 F.3d at 164. The Second Circuit also rejected the argument that the director of the inmate grievance program "should have done more to evaluate [the plaintiff's] condition," as he was also entitled to defer to the judgment of medical staff. *Id.* at 165.

The Court's decision denying Warden Recktenwald's motion for summary judgment runs contrary to this caselaw. The Court reasoned that, because "the record shows she was aware of the [plaintiff's] complaints and yet did nothing to aid his treatment while he was incarcerated at FCI Otisville," she is "not entitled to summary judgment." Opinion at 17. This type of "failure to intercede" claim, however, is precluded by *Cuoco*, which makes clear that a warden's failure to intervene in the medical care being provided by treating physicians does not give rise to *Bivens* liability. Like the warden in *Cuoco*, there is no evidence on this record that Warden Recktenwald had the authority to direct plaintiff's medical treatment. Warden Recktenwald, like the warden in *Cuoco* and the superintendent in *Brock,* was in no position to determine whether the treatment being provided by the facility's medical staff was insufficient, or to provide plaintiff with an appropriate diagnosis of his condition. Warden Recktenwald could no more have ordered plaintiff an MRI or a neurological consult than the warden in *Cuoco* could haveprescribed estrogen treatment. Indeed, Warden Recktenwald's undisputed testimony is that plaintiff first came to her attention on April 11, 2014, that she immediately supported the request to transfer him to a BOP medical center where he could receive more support for his chronic medical condition, Recktenwald Decl. ¶¶ 4-5, and that she understood that plaintiff's medical

6

needs were being adequately treated by the medical staff during the time he was in the SHU awaiting transfer, *id.* ¶ 8.[1]

Thus, the Court overlooked controlling caselaw establishing that Warden Recktenwald's conduct did not violate Gist's constitutional rights, and that she is entitled to qualified immunity. *See Twine v. Powers*, No. 09 CIv. 7631 (RWS), 2012 WL 3834082, at *4 (S.D.N.Y. Aug. 27, 2012) (granting motion for reconsideration where court overlooked controlling Second Circuit precedent).

### III. The Court Overlooked Controlling Caselaw, and Committed Clear Legal Error, in Holding that Subjective Motivation Was Relevant in Assessing Qualified Immunity for a Deliberate Indifference Claim

The Court also overlooked controlling Supreme Court and Second Circuit's caselaw establishing that qualified immunity must be assessed under an objective reasonableness standard. A defendant is entitled to qualified immunity if "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015); *see also Malley v. Briggs*, 475 U.S. 335, 341 (1986) (The inquiry is whether, "on an objective basis, it is obvious that no reasonably competent officer would have concluded" that the conduct at issue was lawful; "if officers of reasonable competence could disagree on this issue, immunity should be recognized."). Because the qualified immunity test is an objective one, "a defense of qualified immunity may not be rebutted by evidence that the defendant's conduct was malicious or otherwise improperly motivated. Evidence concerning the defendant's subjective intent is simply irrelevant to [the qualified immunity] defense." *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998).

---

[1] It is not clear from the Opinion whether the Court's decision regarding AHSA Walls or Captian Whinnery was also based in part on a failure to intercede in his medical treatment. To the extent it is, such claims likewise would fail for the same reason as the claim against Warden Recktenwald.

In rejecting the movants' qualified immunity defense, the Court ignored this controlling caselaw, even though it was cited in the movants' brief. *See* Def. Br. at 12-13; Def. Rep. Br. 4. The Court instead quoted from *Johnson v. Ganim*, 342 F.3d 105, 117 (2d Cir. 2003), for the proposition that "where a factual issue exists on the issue of motive or intent, a defendant's motion for summary judgment on the basis of qualified immunity must fail." Opinion at 19 (quoting *Johnson*, 342 F.3d at 117). The Court then reasoned:

> Here, there is a genuine factual dispute concerning whether defendants Dr. Sommer, AHSA Walls, Warden Recktenwald, and Captain Whinnery had ulterior motives in managing plaintiff's medical care, and whether such motives adversely impacted the provision of medical care plaintiff received at Otisville.

Opinion at 20.

Yet an examination of the holding of *Johnson* reveals that the decision is inapplicable in the present case. In the passage immediately preceding the language quoted by the Court, the *Johnson* court explained that, consistent with the controlling Supreme Court and Second Circuit precedent cited by the movants, "the qualified immunity inquiry is generally an objective one." 342 F.3d at 117. *Johnson* merely recognized an exception to that rule in a First Amendment retaliation claim, because the crux of such a violation is motive-based and "a defendant's subjective intent is indeed relevant" to whether the conduct violated clearly established law. *Id.* The language from *Johnson* upon which the Court relied in its Opinion did not purport to establish a generally-applicable rule with respect to assessing qualified immunity. Nor could it, as the Supreme Court had definitively held that evidence of motive is generally irrelevant to the qualified immunity inquiry.

The Court thus overlooked that the quoted language in *Johnson* does not apply to claims of deliberate indifference to medical needs. To the contrary, the Second Circuit has made clear that in assessing qualified immunity in a deliberate indifference case, "subjective inquiry into a

8

government employee's motivations in acting or refusing to act has been rejected as the doctrine's test because such inquiry generally implicates questions of fact and makes it incompatible with the expressed policy that summary judgment be readily available to protect government employees from suit." *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir. 1991) (holding that objective reasonableness test applied in case alleging deliberate indifference to medical needs); *accord Rodriguez v. Manenti*, 606 Fed. Appx. 25, 26 (2d Cir. 2015) (summary order); *Davidson v. Griefinger*, 164 F.3d 617 (2d Cir. 1998) (summary order); *Lewal v. Tippy*, 133 F.3d 907 (2d Cir. 1998) (summary order) (affirming district court's holding that warden who relied upon judgment of medical staff enjoyed qualified immunity from suit under an objective reasonableness standard). Consistent with this precedent, in *Cuoco*, the Second Circuit applied the objective reasonableness test in determining whether the conduct of non-medical staff violated clearly established law. 222 F.3d at 111. The Second Circuit's conclusion that the Warden was entitled to qualified immunity because it was objectively reasonable for the Warden to defer to the medical staff with regards to issues of medical treatment was unaffected by the evidence in the record that the Warden held animus against plaintiff and transsexuals. *Id.*

Thus, even if it were true that the movants harbored ill will toward plaintiff, that would not overcome their qualified immunity defense. Because the Court relies on evidence regarding the movants' subjective motive in denying their qualified immunity defense, which the Supreme Court and the Second Circuit have definitively stated it cannot do, the motion for reconsideration should be granted.

IV. **The Opinion Overlooks that the Evidence of AHSA Walls and Captain Whinnery's Involvement in any Denial of Medical Treatment Constitutes Inadmissible Hearsay**

In its Opinion, the Court stated that "Plaintiff testified that Captain Whinnery and AHSA Walls had issued an order to all medical staff working the SHU not to enter plaintiff's cell for

9

any reason." Opinion at 6 n.3. The Court relied upon this evidence in determining that there is a material issue of fact as to whether Captain Whinnery denied plaintiff access to medical treatment, and thus could be liable under *Bivens*. Opinion at 18. But the Opinion overlooks the movants' arguments that the only "evidence" plaintiff relies on to support his allegation that Captain Whinnery or AHSA Walls issued such an order is inadmissible hearsay, which cannot serve to create a genuine dispute of material fact. Def. Rep. Br. 1-5.

As the Opinion notes, "[i]n deciding a motion for summary judgment, the Court need only consider evidence that would be admissible at trial." Opinion at 11 (citing *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998)); *accord* Fed. R. Civ. P. 56(c)(2), (c)(1)(B). As this Court has previously held, under this standard "a party 'cannot rely on inadmissible hearsay in opposing a motion for summary judgment.'" *Friedman v. Swiss Re Am. Holding Corp.*, No. 11 CV 1792 (VB), 2015 WL 2330149, at *3 (S.D.N.Y. Mar. 9, 2015) (citation omitted), *aff'd in relevant part, vacated in part on other grounds, remanded*, 643 F. App'x 69, 71 (2d Cir. 2016) ("The proposition that Wieland made this anti-Semitic remark was supported solely by Friedman's statement that Bettineschi had told him that Wieland made the remark. . . . Accordingly this was hearsay.").

The Opinion does not address the admissibility of plaintiff's testimony regarding the issuance of the purported order. The deposition transcript itself, which was part of the summary judgment record, reveals that plaintiff did not testify that he himself heard either Captain Whinnery or AHSA Walls issue such an order, and that plaintiff did not otherwise have personal knowledge as to whether either individual issued such an order. Rather, plaintiff's testimony recounted the purported statements of other non-defendant BOP employees. Declaration of Danielle Rosen, ECF No. 259 ("Rosen Decl."), Ex. C (attaching excerpts of Deposition

10

Transcript of Darrell Gist ("Gist Tr.")); *see also* Plaintiff's Opposition Brief ("Pl. Br."), ECF No. 260, at 8, 22. Specifically, plaintiff testified that Lieutenant Hickman, Nurse Brooks and SIS Lieutenant Diehl told plaintiff while he was in the SHU that Captain Whinnery and AHSA Walls had issued an order to that effect. Gist Tr. 233:24-236:18, 281:2-7. Plaintiff's testimony regarding what he was told by third parties is submitted for the truth of the matter asserted (e.g., that Captain Whinnery and AHSA issued the order in question) and is thus inadmissible under Federal Rule of Evidence 802. *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999) ("Sarno's statement as to what he 'was told' was hearsay that would not be admissible at a trial.").

Plaintiff has not submitted admissible testimony from any of the individuals who purportedly had personal knowledge of whether Captain Whinnery or AHSA Walls issued such an order. Nor can he point to any documentary evidence that establishes that either defendant issued such an order.[2] In the absence of any admissible evidence, the Court erred in holding that plaintiff had established a genuine issue of material fact sufficient to defeat Captain Whinnery's motion for summary judgment.[3]

---

[2] Plaintiff cites medical records in an attempt to corroborate the existence of the alleged order. Pl. Br. 8. But even if those records are taken in the light most favorable to plaintiff, they do not mention Captain Whinnery or AHSA Walls, let alone indicate that either issued such an order regarding plaintiff's medical treatment. The records thus do not suffice to establish the personal involvement of either Captain Whinnery or AHSA Walls in any constitutional violation, which is required for a *Bivens* claim. And as the movants pointed out, plaintiff did in fact receive medical care while he was in SHU. Def. Rep. Br. 6-7.

[3] The Opinion does not make clear whether the Court also relied upon this evidence in denying AHSA Walls's motion for summary judgment, as it was cited only in the section of the Opinion concerning Captain Whinnery. Opinion at 18. This evidence is equally inadmissible as to AHSA Walls, however.

**V.    The Opinion Erroneously Finds That There Is Evidence that AHSA Walls Denied Plaintiff Medical Treatment in His Role on the Utilization Review Committee**

In holding that there is a genuine issue of material fact as to whether AHSA Walls denied plaintiff medical treatment, notwithstanding his administrative role and his lack of medical training, the Opinion relies exclusively on his "decision not to provide plaintiff an MRI and an outside neurology consultation in his capacity as a URC member." Opinion at 16-17; *see also* Opinion at 17 ("there is record evidence AHSA Walls did not approve necessary medical treatment because of cost"). But this mischaracterizes the record evidence, as neither AHSA Walls nor the URC rendered a "decision" not to provide such medical treatment to plaintiff.

Rather, the undisputed evidence demonstrates that Dr. Sommers referred Gist for an MRI and an outside consultation on April 24, 2014. *See* Plaintiff's Counterstatement of Material Facts Pursuant to Local Rule 56.1 in Opposition to Defendants' Motion for Summary Judgment at 22 (not disputing Material Facts 87 and 88). The URC met on May 21, 2014, to consider 87 different referral recommendations relating to dozens of inmates, including Gist. Rosen Decl., Ex. A at US_6412-15. At the time of the URC meeting Gist had already been transferred from the facility. Opinion at 8. The URC thus did not render a decision on the Girt referrals at the May 21 meeting. There is no evidence in the record that the URC met at any time between April 24 and May 21, and there is no evidence that the URC ever disapproved the requested referrals. Thus, there is nothing in the record that creates a genuine issue of material fact as to whether AHSA Walls "did not approve necessary medical treatment" for Gist or that he rendered a "decision not to provide plaintiff an MRI and an outside neurology consultation."[4]

---

[4] Notably, in opposing AHSA Walls's motion for summary judgment, plaintiff did not argue that AHSA Walls denied requests for an MRI or neurology consult, or that this was a theory upon which liability for Walls could be based. Pl. Opp. Br. 22-23. Thus, the Government did not develop the record regarding Walls' role on the URC, or the procedures for obtaining expedited approval of time-sensitive referrals.

It is undisputed that AHSA Walls had no independent authority to refer plaintiff for an MRI or a neurology consult, as he was not a doctor or medical professional. His only role with respect to referrals was as a member of the URC.

To the extent the Opinion is suggesting that AHSA Walls could be liable for any delay between April 24 and May 7 in the URC's consideration of plaintiff's referrals, there is no evidence sufficient to create an issue of material fact that AHSA Walls (1) was aware of a medical need for the MRI and outside consultation to take place in the fourteen days before plaintiff's transfer to the Federal Medical Center at FCI Butner; or (2) had any power to hasten the URC's consideration of the referrals.

First, although the Opinion discusses the evidence that AHSA Walls was aware of plaintiff's injury generally, to the extent that plaintiff seeks to impose personal liability on AHSA Walls for any delay in the approval of specific treatments, plaintiff would need to establish that AHSA Walls had specific knowledge that an MRI and outside consultation were needed on an emergency basis and acted in disregard of that knowledge. *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003) (in a case involving a delay in treatment, "it's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes"); *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw such an inference"). There is no record evidence that AHSA Walls, a nonmedical professional, had any such awareness.

It is notable that the "delay" in question relates only to the fourteen-day period between April 24, when the referrals were first issued, and May 7, when plaintiff was transferred to the

federal medical center. Opinion at 8.[5] Plaintiff points to no evidence that Dr. Sommers ordered these referrals be done on an expedited basis. And there is no evidence that any other medical professional informed AHSA Walls that these referrals were medically urgent, and could not wait until plaintiff arrived at the Federal Medical Center. Absent such evidence, AHSA Walls was entitled to defer to Dr. Sommers's judgment as to whether such referrals should be scheduled on an exigent basis. To the extent that plaintiff is suggesting that AHSA Walls should have independently appreciated the need for expediting consideration of the referrals and intervened in plaintiff's medical care, such an argument fails under *Cuoco* for the reasons set forth *supra* in Part II.

Second, there is no evidence in the record that AHSA Walls had the ability to expedite the URC's consideration of the referrals. There is no evidence that the URC met on a date earlier than May 21 and failed to consider the referrals. There is also no evidence in the record that AHSA Walls had any responsibility for scheduling URC meetings. Dr. Sommers was the URC chairperson and AHSA Walls was just one of five members of the URC. Nothing in the record indicates that AHSA Walls had the authority to convene a URC meeting on an date earlier than May 21. And there is nothing in the record regarding what the procedure would be with respect to approval of tests or consults that were required to be done on an expedited basis.[6]

In light of the complete absence of evidence in the record that AHSA Walls knew that there was a medical need to approve the referrals in the short span of time before plaintiff's

---

[5] It is undisputed that plaintiff was originally scheduled to be transferred on April 28. Opinion at 7.

[6] Had this issue been raised during summary judgment briefing, the movants would have produced evidence that, in cases of time sensitive referrals, Dr. Sommer has the authority to approve such referrals without referring the matter to the URC.

transfer to the Federal Medical Center, or the ability to convene the URC to consider Gist's request prior to May 21, the motion for reconsideration as to AHSA Walls should be granted.

## CONCLUSION

For the foregoing reasons, the movants respectfully request the Court grant their motion for reconsideration and enter summary judgment in their favor.

Dated: March 9, 2020
New York, New York

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney
Southern District of New York

By: */s/ Jeannette A. Vargas*
PETER ARONOFF
JEANNETTE A. VARGAS
Assistant United States Attorneys
Telephone: (212) 637-2697/2678
Facsimile: (212) 637-2717
E-mail: peter.aronoff@usdoj.gov
       Jeannette.vargas@usdoj.gov
*Counsel for Defendants*